The next case today is Hamilat Gonzales-Arroyo v. Doctors' Center Hospital Bayamon, Inc. Appeal No. 21-1689. Attorney Efron, please introduce yourself for the record and proceed with your argument. Thank you. Please, the court, I'm David Efron for the appellant. Chief Judge Howard, I would like to reserve four minutes for rebuttal, please. Yes. Thank you. We are appealing the district court's granting of a summary judgment and a motion in limine that was filed by the defendant 21 months late. Nevertheless, the court granted that motion in what we believe is an abuse of discretion without even a proper Daubert hearing, although based on the Daubert standard, our expert did a differential diagnosis and methodology for his opinion. In our brief, I mentioned the case of Linosca Correa, a case which this honorable court will probably be entertaining shortly and which is a very similar situation with the same expert on another cerebral palsy case in which the same judge did grant a Daubert hearing and ruled that this same expert's methodology in an almost identical case was appropriate. On our motion for reconsideration in this case, the court ignored an updated amended expert report referencing the subsequently produced evidence that the hospital had not originally provided, therefore rewarding the spoliation or absconding of medical records, in this case the heart monitor page for the last 90 minutes before the delivery. Even if a sanction for delay in producing an amended report… Could you clarify something? The heart monitoring report, when you read your expert's deposition, it's clear that he's presented with some of those reports for the first time, but the other side says that they had provided those ahead of time, and could you just clarify that? And could you further clarify, you're saying the 90 minutes that was not at the deposition, those were later provided to you? Well, it's the same thing, and I'll be very happy to explain that. First of all, for a couple of years, we were led to believe that the last 90 minutes of the fetal monitoring tapes were not available. Dr. Shiffrin prepared his report based on what he had. He didn't have those 90 minutes, but with the fetal heart tapes that he had previously, it was enough for him to make a case and an opinion on the case. His deposition, that was before the pandemic, the deposition was taken at his locality in Los Angeles. I believe, if I remember correctly, that deposition was taken on a Monday morning. I think it was like Friday afternoon, and not even to me, but to my office. The defendants dropped the last 90 minutes, which were missing, into a drop box in my office on a Friday when we were traveling on the weekend to take that deposition Monday morning. So when we got to the deposition, we actually had not seen, and Dr. Shiffrin had not seen the last 90 minutes. When he was confronted with the last 90 minutes at his deposition for the first time, he actually thought that no evidence, that no fetal heart monitoring transcripts actually helped our case. He then included that later on in his amended report. So really, that is what I mean by absconding. They held it back, did not provide it as they were supposed to with the certified copies of the medical records of the hospital, but waited until the deposition. But the deposition reads as if he was presented with some monitoring tapes, but still was not presented with the last 90 minutes. Am I wrong? Am I misreading the deposition? I do not recall. I think the last 90 minutes were actually, it was actually shown that the last 90 minutes at that deposition, if I remember correctly. I am confused. I thought the report, the report I thought was written as if there were no records provided to him, 90 minutes or otherwise. Then I thought he was presented records at the deposition, but not for the last 90 minutes. That is how it read to me, but maybe I misread it. You are telling me that at the time he issued the report, he had all of the records up until the last 90 minutes? Except the last 90 minutes of the fetal heart monitoring tapes. So he had fetal heart monitoring tapes for all of it up until the last 90 minutes at the time he issued the report? Correct, because if you notice, I do not have it in front of me, but I believe that in the report he makes reference to the decelerations of the fetal heart and how the blood flow to the baby's brain is affected. He does use that in his report. His report, I thought, says that he is not looking at tapes, but he is looking at medical record notations which have written down what the tapes would have shown to the providers at the hospital. So I thought he was relying on the medical record notes rather than the tapes. He did not have the tapes at the time. He did not have the tapes until the deposition. Any tapes or just the tapes of the last 90 minutes? I believe it is the tapes of the last 90 minutes, which are obviously the most critical ones, Your Honor. The report reads as if he did not have any tapes, period, but we will have to do a record dig. And the deposition reads to me as if he is saying, well, now I have got tapes, but not the last 90 minutes. Right. That is how the deposition reads. Because my question was going to be, did anybody ever find the last 90 minutes? Because in his opinion, he said that whatever the tapes said in the last 90 minutes would impact whether after giving the anesthesia they waited too long to deliver the baby. Okay. So do you know if the last 90 minutes ever turned up? The report also suggested that they were not monitoring the last 90 minutes and that that was problematic. I believe that is correct. I am trying to figure out how we are supposed to review this, because if I understand, the district court seemed to be of the view that the report, at least with respect to the issue of the opinion expressed in the report, the district court seemed to be of the view that something happens in the deposition that calls into question the opinion expressed in the report based on what he sees in terms of the records, not the notations of the records, but the records themselves at that deposition. It is a little hard for me to figure out what your argument is with respect to whether the district court erred, unless I know what records were shown there, what he had beforehand, etc. I think it is clarified in his amended report, which is included in our motion for reconsideration. But that was after judgment entered. Imagine that we are not going to consider that. Maybe we should consider it and we can get to that, but for now, imagine we are not going to consider it. From the perspective of the district court at the time it rules, that the report is problematic because given what happened at the deposition, he no longer can have confidence in the only opinions expressed in that report. How can we evaluate on appeal whether he is right or wrong if we are not certain about what records he had at the time of the report or what records he had at the time of the deposition? So I guess your position is he had everything but the last 90 minutes at the time of the report in terms of records and that at the time of the deposition he got the last 90 minutes of records? Whatever he had of the medical records, in his report he issued an opinion and whatever he had was sufficient for him to find a departure from the standard of care from the defendant. So that itself would call for a Daubert hearing and not just for a summary. No, the Daubert hearing is a different point. That is about whether there was a methodology that could support that conclusion. But the district court ruled that at the deposition when he is confronted with new evidence, he backtracked from the opinion stated in the report. Therefore, the report cannot be the basis for approving him to go forward because the only opinion stated in that report has been effectively backtracked or retracted or so undermined by the expert's own statements that we don't know what his opinion is anymore. A Daubert hearing cannot solve that problem. That is a problem that is intrinsic to what the report states and then what the deposition reflects about what the expert who issued that report is saying about the opinion stated in that report. What is your position on that? Again, I think Dr. Shiffrin felt that he had enough with whatever records he had in order to issue an opinion in this case and he issued a substantial expert opinion which would have been enough to prove his case. Counselor, the report says that at the time he prepared his report, he had records from the hospital which included prenatal records, labor and delivery records, neonatal records, and then he had follow-up records from Florida Hospital, sports medicine, and rehab clinics. I just don't know if the partial fetal heart monitoring tapes were included in those initial records. It would not be under a separate heading. It would be included in the hospital records that were supposed to be provided. Clearly, he was shown something at the deposition that he had not been shown before. Exactly. The district court felt that it brought into doubt the validity of his first report. What happened at the deposition? What happened at the deposition is that he was basically ambushed and was asked to, on the spot... Did it impact the reliability of his report, which was never supplemented? It should not have. What is the argument that it didn't? The argument that it didn't is because the fetal heart monitoring tapes support his opinion. The question is not on the merits, platonically, did it or didn't. The question is, just looking at the words of what your expert stated at the deposition, did those words that he used call into question what he had stated in the report? So that the district court, looking at only two things, what your expert said in the report, and then what your expert said at the deposition, would it be a reasonable judgment by the district court to say, well, when I read what you said at time one, and now when I read what you're saying at time two, I'm not sure what your opinion is anymore. Would that be a reasonable conclusion just from the words used at the deposition in light of what had been said at the report? I don't think it would be reasonable. If you say it's not reasonable, why? What did he say at the deposition that shows he was maintaining the position he had taken at the report with respect to some standard of care from which there was a deviation that caused the harm to the child? Well, two things. Number one, I didn't hear him say that he was backing up from his opinion at the deposition. Secondly, he submitted an amended report, which… That's correct. Assume that couldn't solve the problem. In order for you to win without us having to rely on the amended report, you have to show there was no problem as of the time of the conclusion of the deposition. Notwithstanding the district court, which has discretion, thought there was a problem because it read the deposition to say that the expert was backtracking from what he had said on the report. What in the deposition suggests to you he was maintaining the position stated in the report that would show that there was a standard of care that was breached or that was deviated from that caused harm to the child? What is that opinion and where in the deposition is he reaffirming his commitment to that opinion? Remember that in the deposition, he's being questioned by opposing counsel. He's not being questioned by myself. So, nowhere in the deposition does he back off from what he said in his report. Now, if we can move on to the next area, that's not the only way we can prove the case because the trial court then moved on to grant a motion for summary judgment. As is customary in this judge's courtroom, the court first excludes the expert… Counsel, we're way over time. I'm going to give you one minute to wrap up on this. In this case, the court could not exclude the expert. The court first excludes the expert and then requests from defendants a motion for summary judgment. That's what normally is done because the court did not order that because it was already 30 months after the deadline expired. The court just waited for the hospital to file the usual post in limine boilerplate motion for summary judgment to dismiss the case. At the pre-trial, and I'll just take 30 more seconds, Your Honor. At the pre-trial, we reserved the right to use opposing experts. All witnesses should be available to all parties. The court ignored this and treated the matter as if plaintiff had no witnesses. Plaintiff is convinced that defendant's expert, who in his report did not take issue with anything plaintiff's expert said, could have been led in his testimony, if it was truthful, to admit some of the negligence here. In Santos-Arieta, Judge Thompson recently reversed the trial court that struck the testimony of our opposing expert, which we used at trial. For all of these reasons, or at least for this last reason alone, this child should have been given his day in court. Thank you, Your Honor. If you would mute your audio and your camera. Mr. Ruiz Comas, there you are. Yes. Good morning, members of the panel. My name is Roberto Ruiz Comas. I am the attorney for Dr. Chester Hospital. I'm sorry, Judge Howard. I don't see him. Is he on camera? Yeah. Yes, I see him. I don't see him. Jim, help. Dan, can we pause briefly? Yes, thank you. Sorry about that. IT, can you pause the stream, please? All right, counsel. Thank you. Good morning again. My name is Roberto Ruiz Comas. I am the attorney for Dr. Center Hospital. Let me dispel some of the things that my colleague said in his argument. First of all, Dr. Shiffrin, when he rendered the report, he had not seen any fetal heart rate monitoring. Had they been produced in discovery? Yes, they were produced in discovery because the fetal heart rate strips are not included in the official medical record, but they are in the hospital for production if they are necessary. Were they requested in discovery? Yes, they were, and we did provide them. Excuse me, counsel. Did you provide them the Friday before the deposition, or did you provide them before that? It was not. We provide the records on a Wednesday prior to the deposition. The records were the fetal strips. But after the report? After the report, yes. Were they requested prior to the report? Prior to the report, he didn't request it in discovery. He had his own medical records that he requested to the hospital, and that was the records that were sent to Dr. Shiffrin. He didn't request the hospital records in discovery? Not in discovery per se, no. He requested medical records prior to filing the complaint. The plaintiff requested the medical records. Those were the records that were produced by plaintiff attorney to Dr. Shiffrin. Dr. Shiffrin renders a report. In his report, he clearly states that he had not seen any fetal heart rate monitoring strips. He renders an opinion without the benefit of those strips. Before the deposition was taken, it wasn't a Friday, as he says. On a Wednesday, February 14th of 2018, the fetal heart rate strips were provided to Mr. Efron and to two other attorneys of his office. When did he request them from your office? He didn't request them, the records. We provided those records because since we knew that Dr. Shiffrin had not seen any fetal strips, we wanted to confront him with the fact that there were monitor strips of the baby. When he requested records from the hospital, he got the records somehow. As I said before, the client and his office, prior to filing the complaint, sent a request to the hospital for medical records. The medical records were produced. Why weren't the tapes produced? The tapes are in the hospital. The tapes are not included as part of the medical records. Why?  That's the policy of the hospital. They are not included in the medical records, but they are in the hospital in storage for whatever need they need to be. Council, hold on. Five days prior to the deposition. Excuse me? There was a discovery request for medical records. There wasn't. Let me see if I can clarify this. There wasn't a discovery request for medical records after the case was filed. There was a record request by plaintiffs prior to filing the complaint. So there was no discovery request? There was no discovery request, specifically as to the medical records. I just want to ask my question. Okay, sorry. Are you saying there was no discovery request for medical records after the filing of the suit, but before the deposition? No, no. Since Dr. Chifrin renders a report with the evidence that was provided to them by plaintiffs, when we saw the report, we noticed that he said that there was no monitoring strips on this baby. We understand that. We're just trying to figure out whose obligation it was to provide the strips in the first place. It's clear from the deposition that he didn't see the heart monitoring tapes until the deposition. Yes, but there was not a formal request for medical records after the case was filed. There was a request for medical records prior. And the thing is that when, and let me see if I can get this point across, the thing is that before the deposition, he's provided to counsel the medical records. When we got into the deposition, Dr. Chifrin has not been provided the fetal strips by counsel, by Mr. Efron. So we took a break during the deposition and Dr. Chifrin said, let me look at those strips. And then we gave him all the time he needed. And then we start asking questions. And what happened was that when he saw the monitoring strips, he completely backtracked his reports and opinions. If you go to the appendix in pages 182 to 192, you will see that Dr. Chifrin state the following. The infant did not have any stress. There was no evidence of tachycystole. There was no concrete evidence that placental abruption had occurred. There were no frequent contractions which could have resulted in hypoxia. There was no evidence of bleeding. He said in the deposition the baby was neurologically normal. There was no obvious indication. But, counselor, after that, he did render some further opinions. No, he didn't. I got the transcript up on my laptop. He rendered some further opinions. Well, what he did. After page 192. Yeah, but what happens was he didn't render a supplemental report. No, no. I mean at the deposition. What? I didn't hear you. Sorry. At the deposition after page 192, he gives further opinions. Yeah, but he. About the absence of the last 90 minutes. It wasn't 90 minutes. It was 18 minutes. And the 18 minutes is that when you are going to prepare the mother for delivery in the OR room, you take the strips out, take the mother to the OR room, and do the delivery. It's 18 minutes that were not. Can I ask you something? Yes. Can I just walk through with you my understanding of where we are on the record? And you tell me where I'm going wrong, okay? All right. In the report, one of the opinions he renders, one set of opinions he renders, suggests to me that he thought there is a duty to monitor. That's the standard of care. That there was a deviation from that duty to monitor because it looked like there was no monitoring. And that that failure to monitor probably explains why there was this terrible result. That's the report. Yes. In addition, there is a passage in the report, independent of the monitoring, that reads to me as if he's suggesting there is a concern when you do the spinal that that can itself cause a problem. Though in that report, it's not entirely clear to me what he's saying on that score. Okay? Do you agree that there's a sentence like that in the report? I agree that he says something to the effect in the deposition, yes. Great. Then in the deposition, he's confronted with the fetal heart monitoring strips. Mm-hmm. And that causes him to say a bunch of things about his prior opinion about no monitoring. The district court understood to constitute backtracking. Correct? Yes. Okay. In that same deposition, though, he then says rather affirmative things about his concern that the delay between the time of the spinal and actual delivery could have itself been a cause of what happened to the child. Do you agree with that? He said that, but he was speculating on that, because there was no obvious... Maybe so, maybe so. That opinion is not, as far as I can tell, in any sense backtracking from anything that he said in his prior report. You'd agree with that, right? I agree that... Okay. So the district court doesn't seem to have addressed that aspect of the testimony or that earlier statement in the report and how they relate to each other. And since that line of contention by the expert about what the problem is doesn't seem to me to have anything to do with whether he saw the strips or didn't see the strips, why isn't it a problem that the district court threw out this expert's testimony with respect to that set of opinions? Because he couldn't pinpoint in the deposition, in the record... That's on the merits. That would be a ground for rejection. The district court simply didn't discuss it. There's not a word in the district court's opinion that discusses this aspect of the report or the expert. What explains how we could affirm notwithstanding the district court's failure to address those points? Because I think that the district court, when he read the deposition, because we did send the complete deposition to the district court on the record, and when he saw what we asked Dr. Chifrin towards that specific point, there was no objective evidence that the spinal induction had any cost whatsoever in the terms of the baby's damages. In fact, when this baby was born, the baby was born with AbGers of 8 and 9, and he had no problems whatsoever. In fact, he was discharged three days after or two days after he was born. So that point that he said in the deposition had no bearing whatsoever in the causality of the damages. And the fact of the matter is, and this is something that we cannot get lost, is that Dr. Chifrin's panic in this opinion is that since there was lack of monitoring of the baby's condition during the labor and delivery, that was the cause for the alleged damages that the baby has. So that was one thing that the district court had the benefit of reviewing because they saw the deposition completely. Moreover, you have to understand, we filed a motion for summary judgment. Mr. Efron did not contest any of the facts of the motion for summary judgment. He did not issue a separate document of contested facts. As I understand it below, he did argue to the district court in response to your motion for summary judgment, that part of the reason it shouldn't be denied was because of these statements by the expert at the deposition about the consequence of the delay between the time of the spinal and the time of delivery. And I just don't see the district court responding to that argument. Because the district court, again, read the deposition and in conjunction with everything that he had on the record, the district court understood what I'm telling you now. How do I know that that's what happens? Because the district court doesn't have to address every specific point in a motion for summary judgment. It has to address the point as to why are we asking for summary judgment in the lack of evidence that the plaintiff has concerning the causal relationship between the actions or alleged omissions and the damages. But in granting a motion in limine, he does have to address why he's excluding the witness. Because in the motion in limine, Dr. Chiffrin, excuse me, the court established that Dr. Chiffrin's opinion as to a perverted breach was premised on a non-existent clinical fact or assumption. Namely, that the plaintiff was never placed on a fetal monitor. That doesn't speak to the argument that he made in the deposition and that he alluded to in the report regarding the separate ground for his opinion, which was the delay between the spinal and the time of delivery. What's the answer to that? In his report, he did not say that that delay, because he didn't say that in the report. He said that in the deposition. And he said in the deposition that he never stated that that specific delay had any causality with the damages of the baby. The main argument that Dr. Chiffrin said was, since there was lack of oxygen in his opinion because there was no fetal monitoring, obviously there had to be a lack of oxygen, which was the cause of the damages. Since in his deposition, he backtracks of that. And he never supplements the report. If he wanted to supplement the report with the deposition testimony, he could have done so. He did not do that. And under Rule 26, he had to supplement the report. His failure to supplement didn't prevent you from retaining your own expert. And we did. And so your expert understood what Dr. Chiffrin's opinions to be. So how were you prejudiced by the failure to supplement when you had the original report and the complete deposition? Well, I'm not saying that I was prejudiced by the failure of the expert to supplement the report. I am saying that under Rule 26, if your opinion materially changes from what you testified, what you wrote in the report, because remember, the reliability of the report is different than the reliability of deposition testimony, because the report is not written under oath. His testimony in his deposition was under oath, and he backtracked the substantial claim office report. Therefore, we didn't need to do anything with our expert. I understand that as the opinion. You know, the way that I understand that it's done is the exclusion is not, if it's not based on methodology, the exclusion isn't to the expert qualifications, isn't to the experts at all. It's the particular opinions. It was the particular opinion. He couldn't sustain. Let me finish my question. I'm sorry. I thought you finished. Okay. No, I haven't quite finished. I understand why your argument is that the district court did not abuse its discretion in excluding in the motion and limiting the opinions regarding the theory that the problem was the failure to monitor. What I don't fully understand is why there would be a reason to exclude the expert from testifying about his opinion regarding the delay in delivery with respect to the spinal. On the merits, maybe you're right that there is a reason to exclude it. But since the district court doesn't speak to that question, I'm not seeing what ground there would be for excluding that testimony. If you say it's because he only states it affirmatively in the deposition, Judge Thompson said to you, but there's no prejudice to you from the failure to amend. District court doesn't address that point. So why shouldn't we at least allow testimony by the expert on that point? I understand, but you, and let me see if I can say this. You are going into the aspect of the alleged delay in the spinal induction of the patient and how that can, that is the only period of time which was not, there was no freedom on the strips. And therefore he said that, but he didn't show anything in his deposition testimony, which would objectively point out that that alleged delay was anything related to the damages that they claim. Therefore, since Dr. Chiffrey was not, he said that in his report, but he didn't back it up with objective evidence in the record in his deposition. And since the district court had the opportunity of reading the record and reading the deposition, they are in a better position in terms of determining whether that report complied in terms of providing the obligatory show between alleged liability costs and damages. And that's my position. All right. Thank you, counsel. Thank you very much. Mr. Efron. Yes, your honors. The pretrial order, which was early on in the case of September 1918, indicated as one of the main evidentiary, one of the main pieces of evidence, one of the main exhibits, the hospital record. I've never heard that the fetal heart marring page would not be part of the hospital records. And when you ask for a medical record, you don't ask for it by in piecemeal. I now want the nurse's notes. I will now want the record. I want I now want the fetal heart. You ask for the medical record. The hospital is obligated to turn in everything that they have for that patient in their records, not to withhold part of it because it might hurt them. Because what would those fetal heart monitoring tapes, if timely produced, shown? It would have shown that the hospital employees, the hospital personnel ignored them, didn't see them because that would have shown that the baby was at risk. And that's why they've withheld them. And now they come and they say that it's not part of the medical. Of course, it's part of the record. You know, in all the years I've been doing this, I've never heard that the fetal heart monitoring tapes are not part of the record. The policy of the hospital to keep them separate. Please. So, so the the. Again, the deviation, the deviation of the hospital personnel is clearly shown by by by Dr. Shiffrin in his report. In addition, and again, we had a right to use the opposing expert, which we in the pretrial order, we we reserved the right to use. And, you know, I mean, we had a we had a jury trial specially set to begin. And the court was in a hurry to dismiss this case. So Mr. Mr. Ruiz, Mr. Ruiz says that their expert didn't offer an opinion that was in any way favorable to your client. And that to assume that you could use the expert in a positive way is speculation. You mean you mean the defendant's expert? Yes. Yes. Well, you know, if you look at his report, his report does not deny any of the findings of Dr. Shiffrin. And if if if if the questions were to be prepared and coached and presented correctly to an adverse witness, I think there would have to be certain admissions that would would put us in a position to be able to show the deviation and the negligence of the hospital. Even even without Dr. Shiffrin, we should have had our day in court on that matter, Your Honor. The the. And again, going back to, you know, I think Judge Barron was correct in the in the in the. I'm looking at the at Dr. Shiffrin's deposition. He never he never backed off from his opinion that there was a departure from the standard of the hospital. He said he might have to review it, adjust it. But he never said that his findings and his and what he opined was any different than before the deposition. So with that being said, how does how does how does that help you to say that the doctor admitted, which he which he does in his deposition, that he might have to amend some things? How does that how does that help you when he never when you never supplemented the report until it was too late? Well, it was an emotion for reconsideration. We don't we don't. I think it was still timely, especially when we look at how everything in the case was delayed. The motion for summary judgment was filed 30 months after the the after the the deadline to file this positive motions. The motion limited was filed 21 months later. So, you know, I mean, I agree with your honor that it was late. But, you know, that it that the the that rule cannot be applied just to one of the parties. So. So in that case, you know, when you read when you read the transcript of Dr. Shiffrin's deposition, he doesn't back off from his opinion. He just says that I'd have to look at this, but he does not in any way change his prior opinion of the delay as being the main cause of what happened. Thank you, counsel. Thank you, your honor. That concludes argument in this case. Attorney Efron and Attorney Ruiz, you should disconnect from the hearing at this time.